IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN M. FAUST, PH.D., | : |
| *Plaintiff,* | : **Civil Case No. 2:24-cv-00406** |
| v. | : JURY TRIAL DEMANDED |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, AND DR. JAMES WILSON, PH. D, | : |
| *Defendants.* | : |

**STIPULATION AND ORDER GOVERNING ELECTRONIC DISCOVERY**

AND NOW, this _____ day of _____, 2025, it is ORDERED as follows: Plaintiff Susan M. Faust, Ph.D., ("Dr. Faust" or "Plaintiff") and Defendants Trustees of the University of Pennsylvania ("University") and Dr. James Wilson, Ph.D., ("Dr. Wilson") (collectively, "Defendants") jointly agree and stipulate to the following Electronic Discovery Protocol ("Protocol") in the above-captioned litigation.

1. **Introduction.** The parties agree that the following standards shall assist with electronic discovery ("e-discovery") in this matter. However, this protocol shall not relieve any of the parties from their duties and obligations to reasonably search for and produce documents responsive to properly served discovery requests under the Federal Rules.

2. **Exchange of identification of e-discovery materials.** By **February 19, 2025**, or alternatively an agreed to date thereafter, the parties shall exchange the following information:

    a. a list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities;[1]

---

[1] The parties agree that they may exclude from this identification attorneys and legal support staff who performed or provided ONLY legal services/advice and did NOT perform or provide business service/advice.

    b.  a list of all non-duplicative Custodial Data Sources and Non-Custodial Data Sources, where responsive ESI or electronic documents are reasonably likely to be found, including a brief description of each Custodial or Non-Custodial Data Source, and either (a) a statement that the Custodial or Non-Custodial Data Source is reasonably susceptible to key word searching or (b) a statement that the Custodial or Non-Custodial Data Source is not susceptible to key word searching along with a brief explanation as to why not.  As used herein, "Custodial Data Source" means any data source used for business purposes that is within a party's possession, custody, or control in or on which a custodian may store potentially relevant documents or ESI, including but not limited to company-issued and personal computers, laptops, tablets, email (whether stored locally or centrally), mobile devices, messaging applications (e.g., WhatsApp, SMS, iMessage, Skype, Signal, Microsoft Teams, Slack), shared network serves, shared or individual network folders, cloud storage systems, structured data systems, or social media.  "Non-Custodial Data Source" means any data source that is within a party's possession, custody, or control, which is not kept or maintained by any particular custodian but that may contain potentially relevant documents or ESI, including data sources used by any department, business unit, or division of any party, shared drives, and shared storage systems that may contain potentially relevant information.

    c.  other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility, that is, those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost, and for any data sources a party identifies as not reasonably accessible under FRCP 26(b)(2)(B), the party shall, to the extent it is reasonably able, provide the type, data,

custodian, electronic system, or other criteria sufficient to specifically identify the data source, and a description of why it considers the information not reasonably accessible; and

    d.  a description of any problems reasonably anticipated to arise in connection with e-discovery.

  3.  **Search methodology.** If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose to the requesting party the proposed search terms that the producing party believes in good faith will locate potentially responsive ESI along with the information required under Section 2. On **February 24, 2025**, a requesting party may request no more than twelve (12) additional terms (absent a showing of good cause or unless otherwise agreed to by the parties) ("Additional Terms") to be used in connection with the electronic search for each Custodial or Non-Custodial Data Source. To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g. time frames, fields, document types). The provided search terms shall be narrowly tailored to particular issues. Indiscriminate terms are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "A" and "B") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "A" or "B") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or search term. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production where such narrowing searches can practically be run.

  4.  **Searches, Hit Reports, and Meet and Confer.** The parties shall run each of the requested searches provided on the Custodial and Non-Custodial Data Sources subject to the Search methodology, and, on **March 10, 2025**, the parties shall exchange a hit count report by

term and source for the Additional Terms that were exchanged pursuant to paragraph 3. The parties may run sample searches or use predictive modeling to evaluate the suitability of the proposed search terms. Then, on **March 12, 2025**, the parties shall have a meet and confer regarding these hit reports. If the search terms appear to be retrieving an inordinately large volume, or a significant amount, of irrelevant material or otherwise appear to be unsuitable for the needs of this case, the parties shall meet and confer to discuss ways to narrow the search to avoid collection and processing of such materials. The parties shall also meet and confer if certain search term string formats are not suitable for certain Custodial or Non-Custodial Data Sources. The parties also agree that as part of the meet and confer process, based on hit count reports, the list of Additional Terms may be modified (including modifying search criteria and/or limiters, substituting any search term, and/or adding search term, as long as the total number of additional search terms does not exceed twelve (12)). If the list of Additional Terms is so modified, the parties shall provide hit count report for the list of Additional Terms as modified and the parties shall meet and confer regarding the hit count reports. The parties agree that all searches, once run and hit count agreed to, will cut off as of the date of collection, with no continuing obligation to run subsequent searches applying the previously run search terms to the same Custodial and Non-Custodial Data Sources, absent a showing of good cause by the requesting party. This cut off agreement does not in any way reduce or limit each party's duty to supplement under Fed. R. Civ. P. 26(e).

5. **Review**. Search terms that are used to retrieve and collect hits will result in the "Search Set" that will be reviewed and produced pursuant to this Protocol. For avoidance of doubt, the search terms shall be applied to all "family members," (*e.g.*, attachments), and any such family member, along with the email to which it is attached and all other family members, shall be

included within the Search Set. The Search Set will be reviewed for relevance and privilege before production.

6. **Production format.** The parties agree to produce documents identified pursuant to this Protocol as follows:

a. Except for privileged material, the producing party will produce each responsive document in its entirety by including all attachments and all pages, regardless of whether they directly relate to the specified subject matter. The producing party should submit any attachments in a manner from which it is reasonable to determine the document to which it relates. Attachments must be produced along with the document to which they are attached, regardless of whether they have been produced separately. Copies that differ in any respect from an original (because, by way of example only, notations have been added) should be produced separately.

b. Documents stored electronically in the ordinary course of business shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original documents:

i. Submit Microsoft Excel, Access, and Power Point files in native format with extracted text and metadata, except if any such files are being redacted.

ii. Submit emails in TIFF format with extracted text and the following metadata information to the extent available: Alternative Custodian, Bates Begin, Bates End, Beg Attach, End Attach, Custodian, Email BCC, Email CC, Sort Date, Email Date Received, Email Date Sent, Email From, Email Message ID, Email Subject, Email Time Sent/Received (or time created and/or modified), Email To, Email Time Sent, Folder/original file path, Filename with Extension, Hash, and Text Link.

     iii. Submit email attachments, other than those described in Section 7(b)(i), in TIFF format. For all email attachments, provide extracted text and the following metadata and information as applicable and to the extent available: Alternative Custodian, Bates Begin, Bates End, Beg Attach, End Attach, Custodian, Sort Date, Data Created, Date Modified, Filename with Extension, Hash, Native Link, Parent ID, Text Link, Time Created, and Time Modified.

     iv. Submit all other electronic documents and ESI in TIFF format accompanied by extracted text and the following metadata and information to the extent available: Alternative Custodian, Sort Date, Bates Begin, Bates End, Beg Attach, End Attach, Custodian, Date Created, Date Modified, Filename with Extension, Hash, Originating Path, Native Link, Text Link, Time Created, and Time Modified.

     v. Submit redacted documents in the format originally found or which is able to be reasonably converted to format accompanied by OCR with the metadata and information required by relevant document type in Section 7(b)(i)-(iv) above.

     vi. Submit data compilations in electronic format, specifically Microsoft Excel spreadsheets or delimited text formats, with all underlying data unredacted and all underlying formulas and algorithms intact.

   c. The producing party need only produce a single copy of a particular electronic document.

     i. Global Deduplication: A producing party may de-duplicate ESI globally, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC Or other blind copy field, even if all remaining content in the email is identical. Removal of duplicate

documents should be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the "Alternative Custodian" metadata field, to the extent applicable.  The parties agree that production of ESI globally de-duplicated in accordance with the provisions of this Order shall constitute production of ESI as maintained in the ordinary course of business.

      ii.      Deduplication Methodology: If a producing party elects to de-duplicate, the producing party shall identify ESI duplicates by using industry standard MD5 or SHA-1 algorithms (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only.

      d.      Email Thread Suppression: Email threads are email communications that contain prior or lesser-included email communications.  A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread.  A producing party may use e-mail thread suppression to exclude email from production, provided however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser-included version of an email that does not include the attachment or content, even if all remaining content in the email is identical.  To the extent that a producing party uses e-mail thread suppression to exclude email from production, the producing party shall produce the metadata for that suppressed email.  Upon reasonable request, the producing party will produce a less inclusive copy of a document.

e. Password Protected Files: The producing party shall make reasonable efforts to ensure that encrypted or password-protected documents are successfully processed for review and production and the decrypted document is produced. To the extent such documents are not successfully processed, the producing party agrees to, upon request from the receiving party identifying the Bates number for such document: (a) produce a slipsheet for each encrypted or password-protected document that cannot be successfully processed indicating that the document cannot be encrypted; (b) provide the metadata for the document, as required under this Section 7, to the extent it can be reasonable extracted from the file in its encrypted form.

f. A party may make a reasonable request for additional information (e.g., metadata overlay), pursuant to the terms of this ESI Protocol, for any document previously served by another party. The requesting party should identify any such document by Bates number. The responding party should produce the requested information if doing so would not result in substantial cost or burden to the producing party.

7. **Production timing.** The Parties agree to begin producing documents from each Search Set within 21 days of providing hit reports, with supplemental productions to continue at least every other week until completion. The producing party shall notify the requesting party upon substantial completion of document production.

8. **Privilege log.** Privileged documents from the Search Set that are also relevant to the issues in this case will be logged. The parties will have the option to, in the first instance, exchange within 15 days of substantial completion of document production of all parties metadata privilege logs, which contain the following information: Document Id; Sent Date; Author/From; Email to; Email CC; Email BCC; Subject; Privilege Assertion; Privilege Notes. The parties agree to work in good faith to allow for privilege inquiries stemming from the metadata logs as needed.

8

The parties shall not be required to log communications with trial counsel or attorneys and legal support staff who performed or provided ONLY legal services/advice and did NOT perform or provide business service/advice after May 15, 2023.  The producing party may group individual e-mails from a single thread or related threads into a single log entry provided that the log differentiates between single e-mails and groups of e-mails and all authors and recipients in the group are identified.  For example:

| Date | Author | Recipient(s) | Subject | Privilege Claimed | Privilege Reason |
|---|---|---|---|---|---|
| 9/2/23 | Mr. CEO | Mr. Lawyer<br>Ms. Lawyer<br>Ms. CFO<br>Mr. Paralegal | MPO Testing | AC/WP | Confidential e-mail communication regarding request for legal advice in connection with litigation. |
| 9/5/23-<br>9/10/23 | Mr. CEO<br>Ms. Lawyer<br>Mr. Lawyer | Mr. CEO<br>Ms. Lawyer<br>Mr. Lawyer | MPO Testing | AC/WP | Multiple confidential e-mail communications among counsel and client regarding request for legal advice and providing legal advice in connection with litigation. |

9.  **Costs.**  Generally the costs of discovery shall be borne by each party.  However, the parties reserve the right to seek a Court Order reapportioning the costs of unduly burdensome electronic discovery upon showing of good cause.

10.  **Mutual Understanding**.  The parties acknowledge the extent of discovery previously undertaken in connection with this dispute.  The parties enter this Stipulation without waiver of any objections related to the proportionality of the scope and extent of requested discovery and concerning where (or within what timeframe) responsive information is reasonably expected to be found, and without waiver of any right to inquire as to the relevant electronic system in place at all relevant times and electronic document retention policies. Moreover, by agreeing to this Protocol, neither party has waived any right to seek additional e-discovery, including seeking

additional search terms beyond the twelve additional terms specified in Section 3, additional e-discovery related to the document requests served as of the date of this Stipulation, and any additional document requests to be served in the matter. Conversely, neither party has waived any right to object to such additional e-discovery.

| | |
|---|---|
| **KANG HAGGERTY LLC** | **MORGAN, LEWIS & BOCKIUS LLP** |
| By: */s/ Susan Moon O*<br>　　Edward T. Kang<br>　　Susan Moon O<br>　　Ross M. Wolfe<br>　　Sofia Calabrese<br>　　123 S. Broad Street, Suite 1950<br>　　Philadelphia, PA 19109<br>　　P: (215) 525-5850<br>　　F: (215) 525-5860<br>　　*Counsel for Plaintiff* | */s/ Julie S. Goldemberg*<br>Julie S. Goldemberg (PA Bar No. 314339)<br>Amy M. Dudash (PA Bar No. 311898)<br>Alison P. Patitucci (PA Bar No. 330485)<br>2222 Market Street<br>Philadelphia, PA 19103-2921<br>Telephone: 215.963.5000<br>Fax: 215.963.5001<br>julie.goldemberg@morganlewis.com<br>amy.dudash@morganlewis.com<br>alison.patitucci@morganlewis.com<br><br>*Counsel for Defendants* |

**IT IS SO ORDERED** this ___ day of _____, 2025

_____
THE HONORABLE JOHN F. MURPHY
UNITED STATES DISTRICT JUDGE